584

*Henry G. Bozeman*, for appellee.

### 76357. GORLIN v. REECE.
(370 SE2d 834)

BEASLEY, Judge.

This appeal stems from a dispute surrounding two promissory notes executed by Reece in favor of Gorlin.

In the late 1960's Gorlin and Reece were involved together in several business enterprises and transactions. In 1969, the parties agreed that Reece would purchase 35,000 shares of Tagor Exploration Company stock from Gorlin. The terms of the transaction were memorialized in an agreement dated October 28, 1969, which was approved by Reece and Gorlin and witnessed by Gorlin's attorney.

The agreement stated that Reece was purchasing from Gorlin the 35,000 shares for $210,000 at $6 per share. Payment was to be: "$100,000.00 by check, a promissory note for $50,000.00 to be paid 30 days from date, and the balance of $60,000.00 paid as follows: a note for $40,000.00 due 90 days from date, $9,000.00 as monies advanced for Steve Gorlin towards purchase of Tagor stock, $6,000.00 as pro-rata share of previous expenses owed Tagor. In addition . . . $5,000.00 is owed to Steve Gorlin but to be offset against expenses owed to Fred A. Reece and balance adjusted between the parties after exact expenses are calculated." The document also stated that Reece agreed to place with Gorlin's attorney 30,000 shares of Tagor in escrow as collateral. On that same day, Reece executed the two required promissory notes for $50,000 and for $40,000. There is no evidence or contention by Reece that they were ever paid in cash.

In 1980, Gorlin borrowed $15,000 from Reece, executing a promissory note. As part of the loan transaction, Gorlin wrote "paid and satisfied in full this 8th day of December, 1980" on the bottom of the face of the 1969 stock purchase/sale agreement and signed it. This $15,000 note was cancelled in 1982 in consideration of a stock transfer from Gorlin and a second note for $9,393.12 was executed. Reece filed suit against Gorlin for payment of the $9,393.12 note.

Gorlin filed the instant suit against Reece for payment of the $50,000 and $40,000 notes plus interest, attorney fees and costs of the action. Reece's motion for summary judgment was granted and Gorlin's denied after the court found that it was undisputed that Gorlin admitted marking and signing the 1969 stock purchase agreement. The court concluded that the signed and written release on the face of the agreement evidenced that the terms of the agreement were "Paid & Satisfied in Full" and operated to discharge the obligations thereunder, and that Gorlin had thereby renounced any right to col-

lect cash on the $90,000 notes.

Gorlin argues that he, rather than Reece, should have summary judgment or that at least he is entitled to a jury trial. He claims the law applicable to alleged satisfactions does not permit the blank, unspecified nature of what he characterizes as merely the escrow satisfaction to discharge the promissory notes. He urges that only the trier of fact can resolve the conflict in the evidence as to the meaning of the "escrow" satisfaction. Gorlin's position is that he was signing off merely on that part of the stock agreement which involved the holding of collateral.

Assuming for the sake of argument that the release language was ambiguous, even ambiguous instruments may be construed by the court, and a jury question is presented only when the application of the rules of construction fails to resolve the ambiguity. Parol evidence may explain any ambiguity but such evidence may not add to, take from, or vary the writing itself. *Andrews v. Skinner*, 158 Ga. App. 229 (279 SE2d 523) (1981); OCGA § 24-6-4.

The evidence construed favorably for Gorlin was that in 1980, he demanded payment from Reece on the two notes and that Reece told him he had paid them. Reece said he would loan Gorlin some money, if Gorlin put up some stock as collateral and if Gorlin signed off on the stock agreement that Reece's obligations to him, which included the two notes at issue, were paid and satisfied. Reece's counsel told Gorlin that the statute of limitation on the notes had run anyway. Gorlin wrote and signed the release because he felt that as long as he did not sign off on the notes themselves, he would not be releasing Reece's obligation to pay them but only as related to the collateral.

Thus it is without dispute that the quid pro quo for the $15,000 loan was the release of all Reece's obligations under the stock agreement which included the two notes, and that Gorlin thought he could circumvent this by executing release language merely on the agreement rather than on the notes themselves.

Even without consideration, the holder of an instrument may discharge any party by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged. OCGA § 11-3-605 (1) (b). Although the holder may accomplish the discharge on the instrument itself, see OCGA § 11-3-605 (1) (a), there is no requirement that the holder do so. Nor are there any specific words which must be written to effect the cancellation and renunciation.

While the $90,000 debt itself was created by the two promissory notes, the agreement, erroneously now limited by Gorlin to designation as only a "stock escrow agreement," evidenced the terms of the entire transaction. The court correctly read the release on the face of the agreement to relate to all of the obligations thereunder, including

the $90,000 debt which was the only monetary obligation which remained after execution of the agreement. Gorlin's unilateral mistakes of law do not avoid the effect of the blanket release. OCGA § 13-5-4; *Malin v. Servisco*, 172 Ga. App. 418 (1) (323 SE2d 278) (1984).

*Judgments affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED JUNE 21, 1988.

*Taylor W. Jones, Rickman P. Brown*, for appellant.
*Geoffrey H. Cederholm III*, for appellee.